## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

CARLTON L. WILLIAMS, SR.,

      Petitioner,

v.                                  Case No. 1:23-cv-206-AW-MJF

RICKY DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Carlton Williams, Sr., proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, Doc. 25, and provided relevant portions of the state-court record, Docs. 15, 29. Williams replied. Doc. 27. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Williams is not entitled to habeas relief.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Williams is challenging a revocation-of-probation judgment entered on January 28, 2019, in Alachua County Circuit Court Case No. 2013-CF-3503. Doc. 1 at 1.

In Case No. 2013-CF-3503, Williams was convicted of Sale of a
Controlled Substance (Count 1) and Possession of a Controlled Substance
(Count 2). Doc. 15-2, Ex. B (J.). The trial court sentenced Williams on
Count 1 to 60 months of imprisonment followed by 1 year on drug
offender probation. *Id.*; Doc. 15-4, Ex. D (Am. Sentence); Doc. 15-19, Ex.
S (Second Am. Order of Drug Offender Probation). On Count 2, the trial
court sentenced Williams to a concurrent term of 60 months of
imprisonment. Doc. 15-12, Ex. L (Am. Sentence). The Florida First
District Court of Appeal ("First DCA") affirmed the judgment on January
15, 2015, without opinion. *Williams v. State*, No. 1D14-2647, 156 So. 3d
1085 (Fla. 1st DCA 2015) (Table) (per curiam) (copy at Doc. 15-7, Ex. G).

On October 24, 2018, Williams was charged with violating his
probation by possessing cocaine and marijuana with the intent to sell it.
Doc. 15-19, Ex. S (Violation Report); Doc. 15-20, Ex. T (Aff. of VOP). The
VOP court conducted an evidentiary hearing on the charges, determined
that Williams violated Condition 5 of his probation, and revoked
Williams's probation on January 28, 2019. Doc. 29-1, Ex. ZZ (VOP Hr'g
Trs.); Doc. 15-23, Ex. W (Order of Revocation of Probation). The VOP
court sentenced Williams to 15 years of imprisonment. *Id.*; Doc. 15-24,

Ex. X. The First DCA affirmed on August 2, 2019, without opinion. *Williams v. State*, No. 1D19-0456, 276 So. 3d 272 (Fla. 1st DCA 2019) (Table) (per curiam) (copy at Doc. 15-31, Ex. EE).

On October 8, 2019, Williams filed a *pro se* motion for reduction and modification of sentence under Florida Rule of Criminal Procedure 3.800(c). Doc. 15-32, Ex. FF. The state circuit court denied the motion on October 18, 2019. Doc. 15-33, Ex. GG. Williams did not appeal.

On February 10, 2020, Williams filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 that raised two claims: a claim under *Strickland v. Washington*, 466 U.S. 668 (1984), and a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). Doc. 15-34, Ex. HH. The state circuit court denied relief. Doc. 15-35, Ex. II. The First DCA affirmed without opinion. *Williams v. State*, No. 1D20-2908, 313 So. 3d 87 (Fla. 1st DCA 2021) (Table) (per curiam) (copy at Doc. 15-39, Ex. MM).

On January 29, 2021, Williams filed in the state circuit court a *pro se* habeas corpus petition, claiming that the court lacked jurisdiction to revoke his probation because the underlying traffic stop and arrest were illegal. Doc. 15-40, Ex. NN. The circuit court's civil division transferred

the petition to Williams's criminal case where it was construed as a second Rule 3.850 motion. The circuit court denied the motion because Williams's claim was procedurally barred. Doc. 15-41, Ex. OO. The First DCA affirmed without opinion. *Williams v. State*, No. 1D21-0798, 331 So. 3d 124 (Fla. 1st DCA 2021) (Table) (per curiam) (copy at Doc. 15-45, Ex. SS).

On August 8, 2022, Williams filed in the state circuit court a second *pro se* habeas corpus petition (titled "Petition for Writ of Habeas Corpus Ad Subjiciendum"). Doc. 15-46, Ex. TT. The petition raised a double-jeopardy claim. The circuit court's civil division transferred the petition to Williams's criminal case where it was construed as a third Rule 3.850 motion and denied as untimely on August 19, 2022. Doc. 15-47, Ex. UU. Williams did not appeal.

On August 29, 2022, Williams filed in the First DCA a *pro se* habeas corpus petition (titled "Petition for Writ of Habeas Corpus Ad Subjiciendum"). Doc. 15-48, Ex. VV. This petition was identical to the petition Williams filed in the state circuit court on August 8, 2022. The First DCA required Williams to show cause why the court should not treat the petition as invoking the court's appellate jurisdiction. Doc. 15-

49, Ex. WW. Williams responded that he was invoking the First DCA's original jurisdiction and not its appellate jurisdiction. Doc. 15-50, Ex. XX. The First DCA treated Williams's habeas petition as invoking the court's original jurisdiction and summarily dismissed the petition on July 19, 2023, citing *Baker v. State*, 878 So. 2d 1236, 1245-46 (Fla. 2004). *See Williams v. Reddish*, No. 1D22-2966, 367 So. 3d 609 (Fla. 1st DCA 2023) (Table) (per curiam) (copy at Doc. 15-51, Ex. YY).

Williams filed his federal habeas petition on August 10, 2023. Williams challenges the revocation of his probation on two grounds: (1) counsel was ineffective for "fail[ing] to investigate the key factors which would have supported Innocence;" and (2) the State committed a *Brady* violation by failing to disclose evidence "pertaining to the handling of evidence which included photos and investigation reports." Doc. 1 at 5, 9.

The State asserts that Williams is not entitled to relief because his first claim was denied on the merits consistent with *Strickland*, and his second claim is procedurally defaulted.

## II.   SECTION 2254 STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state

court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[1] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13 (O'Connor, J., concurring). In applying the "unreasonable application" clause, the federal court defers to the state court's reasoning unless the state court's application of the governing

---

[1] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court warned that, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause of § 2254(d)(1), the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, however, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

### III.   DISCUSSION

**Ground One**        **"Violation of Due Process Clause of the U.S. Constitution: Trial counsel failed to investigate the key factors which would have supported Innocence." Doc. 1 at 5.**

Williams claims that his counsel at the probation-revocation hearing was ineffective because counsel "failed to investigate the key factors which would have supported Innocence." Doc. 1 at 5. Williams provides no additional information about this claim. Williams asserts that he exhausted the claim by raising it on direct appeal of his VOP judgment and in his state habeas petition that was denied by the state circuit court on August 19, 2022 as untimely (the construed third Rule 3.850 motion). *Id*. at 6-7.

The State maintains that Williams did not raise this claim in his direct appeal or in the habeas petition he references. Rather, Williams raised this claim in his first Rule 3.850 motion, and the state court denied relief on the merits. Williams, therefore, must satisfy § 2254(d)'s demanding standard, which he fails to do. Doc. 25 at 17-22.

### A.   *The State Court's Decision*

Williams did not raise an ineffective-assistance claim in his direct appeal from the VOP judgment. *See* Doc. 15-28, Ex. BB (Initial Br.) There, he challenged only the sufficiency of the evidence. Williams also did not raise an ineffective-assistance claim in any of his state habeas petitions. *See* Doc. 15, Ex. NN, Ex. TT, Ex. VV.

Williams did, however, raise an ineffective-assistance claim in his first Rule 3.850 motion. Doc. 15-34, Ex. HH at 5-7. He claimed that his VOP counsel was ineffective for failing to investigate "witnesses at the Internet Café-Casino where Defendant advised counsel to check out which would've proved his location of how he won the quantity of one dollar bills that was seized on his person with plastic sandwich bag retrieved when redeemed the casino earnings." *Id*. at 5. Williams also faulted counsel for not "hav[ing] investigators take complete photo[s] of

Page 10 of 30

Defendant's interior of car to refute any statement where Officer Carmichael alleges he found the initial baggie of cocaine in ashtray or cigarette lighter, but photo[s] were taken of search in other areas of the car." *Id*.

The state circuit court identified *Strickland* as the controlling legal standard. Doc. 15-35, Ex. II at 2-3. The court denied relief as follows:

> As to Ground One(a), Defendant alleges that trial counsel was ineffective for failing to investigate "witnesses at the Internet Café-Casino where Defendant advised counsel to check out which would've proved his location of how he won the quantity of one dollar bills that was seized on his person with plastic sandwich bag retrieved when redeemed the casino earnings." According to Defendant, had counsel investigated this information, he would have been found not in violation of his probation.

> During the VOP hearing, Defendant testified that he won the money found on him during his arrest at an internet café/casino; and, that it was his habit to keep the money folded in the manner it was found in by law enforcement. Defendant further testified that he went at the internet café-casino with his "cousin" Anthony Gainey, who testified as a defense witness during the VOP hearing.

> Whether Defendant went to an internet café-casino on the day of the traffic stop in this case, or not, was not in dispute. Neither was the way he kept his money separated. The only issue during the VOP hearing was whether Defendant was in constructive possession of the cocaine and marijuana found in his vehicle. There would have been no purpose in counsel investigating Defendant's presence at the

internet café-casino that day; or, further investigating the manner in which Defendant kept his money. And, no investigation as to these facts would have disproven Defendant's knowledge of the drugs found in his vehicle. For these reasons, Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit.

As to Ground One(b), Defendant alleges that trial counsel was ineffective for not "hav[ing] investigator take complete photo[s] of Defendant's interior of car to refute any statement where Officer Carmichael alleges he found the initial baggie of cocaine in ashtray or cigarette lighter, but photo[s] were taken of search in other areas of the car." Defendant consented to the search of his vehicle. Furthermore, it was undisputed that the initial bag of cocaine was found in a *closed* ashtray between the driver's and passenger's seats. Thus, there was no dispute that the initial bag of cocaine was not in plain view while the ashtray was closed. And, Deputy Carmichael, who found the cocaine, never said that it was. Furthermore, given that the search was consensual, whether the cocaine was in the ashtray or somewhere else in the vehicle is irrelevant. For the foregoing reasons, Defendant fails to show either error or prejudice. Accordingly, the claim raised in without merit.

Doc. 15-35, Ex. II at 3-4 (alterations in original) (citations to VOP hearing transcript omitted). The First DCA affirmed without explanation. Doc. 15-39, Ex. MM.

## B.  *Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel*

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. The petitioner must show (1)

his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines

confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter* at 105 (citations omitted).

### C.    *Williams Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Williams's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary). Because the First DCA's order is unexplained, this court employs the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). In other words, this court presumes that the First DCA rejected Williams's claim for the reasons provided by the state circuit court.

The state court's decision is not "contrary to" clearly established federal law, because the state court identified and applied the *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Williams must show that the First DCA's

decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Williams fails to make either showing.

"AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing 28 U.S.C. § 2254(e)). "[I]n a habeas case governed by AEDPA, clear and convincing evidence consists of proof that a claim is 'highly probable.'" *Ingram v. Warden, Holman Corr. Facility*, 80 F.4th 1304, 1313 (11th Cir. 2023), c*ert. denied sub nom. Ingram v. Holman CF*, No. 23-6776, 2024 WL 2116373 (U.S. May 13, 2024) (quoting *Fults v. GDCP Warden*, 764 F.3d 1311, 1314 (11th Cir. 2014)).

This court defers to the state court's factual findings because they are amply supported by the VOP record. *See* Doc. 29-1, Ex. ZZ. Williams has not rebutted any finding with clear and convincing evidence.

For background, Condition 5 of Williams's probation required him to live and remain at liberty without violating any law. Williams was

found guilty of violating Condition 5 by committing the criminal offenses of Possession of Cocaine with Intent to Sell, and Possession of Marijuana with Intent to Sell. Doc. 15-23, Ex. W; Doc. 29-1, Ex. ZZ.

The VOP charges arose from a traffic stop by Deputy Jason Carmichael on October 16, 2018. Carmichael stopped Williams for an inoperable tag light. Williams was the owner, driver and sole occupant of the car. He had owned it for a month. Williams consented to Carmichael searching his car. During the search, Carmichael found a packet of cocaine in an ashtray console between the driver and passenger seats. When Carmichael asked Williams if there was a way to open the trunk, Williams said that the trunk would not open because the trunk release was inoperable. Carmichael, however, was able to open the trunk easily—on the first try—with the car fob/key.

As Carmichael searched the trunk, Williams's demeanor changed from relaxed to concerned. Carmichael eventually found 2 packets of cocaine and 6 packets of marijuana hidden in a Fritos bag which, in turn, was hidden in a boot in Williams's trunk. Each packet was the same type of packet as the packet in the ashtray containing cocaine. The total weight of the crack cocaine from the three packets was 1.7 grams. The

total weight of the marijuana from the six packets was 5.1 grams. When Carmichael searched Williams's person, he found a plastic bag containing four stacks of $1 bills, folded in $10 increments. Carmichael also found money in Williams's wallet. Doc. 29-1, Ex. ZZ at 564-99 (Carmichael's and Deputy Anderson's Test.); Doc. 29-1, Ex. ZZ at 703-38 (Exhibits).[2]

At the VOP hearing, Williams testified that the $1 bills in the plastic bag were gambling winnings from the internet café/casino he had been to that day. Doc. 29-1, Ex. ZZ at 616-17, 627-28. Williams explained that the casino cashed out Williams's winnings in $1 bills. Williams grouped the $1 bills together in $10 stacks to keep them organized and easy to count. Williams kept the stacks of gambling winnings separate from the money in his wallet. *Id*.

Another defense witness—Anthony Gainey—corroborated Williams's testimony about the $1 bills. Gainey testified that he and Williams were gambling at the internet café/casino earlier the day of the traffic stop; Williams won money; and Williams cashed-out his winnings

---

[2] State's Exhibit ZZ contains three transcripts and the exhibits from the VOP hearings. Citations to page numbers of Exhibit ZZ are to the numbers appearing at the bottom center of the page.

in $1 bills which he then separated into $10 stacks and placed in bag. Gainey had taught Williams that practice of organizing and storing his winnings. *Id.* at 630-33, 35-36.

Williams claims that counsel was ineffective for failing to investigate and obtain *additional* testimony from people at the internet café/casino to corroborate the testimony about the gambling winnings. This claim fails because a fairminded jurist could agree with the state court's conclusion that Williams failed to carry his burden under *Strickland*.

The state court's conclusion on *Strickland*'s performance prong was reasonable, because the additional proposed testimony was, at best, of limited relevance and would have been cumulative to Williams's and Gainey's testimony. *Turner v. Crosby*, 339 F.3d 1247, 1277 (11th Cir. 2003) (counsel's failure to submit cumulative testimony was not deficient performance); *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1157 (11th Cir. 1999) ("[C]ounsel's failure to present cumulative evidence is not ineffective assistance.").

The state court's conclusion on *Strickland*'s prejudice prong also was reasonable. Williams failed to show that there was a reasonable

probability the result of his VOP hearing would have been different had counsel presented more evidence that the $1 bills were gambling proceeds. Again, the proposed evidence would have been merely cumulative to Williams's and Gainey's testimony. *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."); *Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("[A] petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial."); *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 660 (11th Cir. 2014) (same) (citing *Rose*); *Glock v. Moore*, 195 F.3d 625, 636 (11th Cir. 1999) (a habeas petitioner cannot show prejudice "where much of the new evidence that [petitioner] presents is merely repetitive and cumulative to that which was presented at trial").

Additionally, as the VOP trial and postconviction courts detailed, there was abundant evidence—aside from the $1 bills—that Williams possessed the cocaine and marijuana in his vehicle, and that he intended to sell it. Williams was the owner, driver, and sole occupant of the car. There was a packet of cocaine in the ashtray between the driver and passenger seats. There was a large amount of cocaine and marijuana in

Williams's trunk. The cocaine and marijuana in the trunk was packaged for individual sale in the same type of packet as the cocaine in the ashtray. Williams knew about the boots in his trunk. Williams tried to avoid Deputy Carmichael accessing the trunk by telling him the trunk would not open, which was not true. Williams's demeanor changed from relaxed to concerned when Carmichael started searching the trunk. *See* Doc. 29-1, Ex. ZZ at 667-70, 671-74, 689, 691-93 (VOP court's findings); Doc. 15-35, Ex. II at 3-4 (state postconviction court's findings).

Given this abundant, other evidence of Williams's guilt, there is not a reasonable probability the result of the VOP hearing would have been different had counsel presented additional testimony about where the $1 bills came from and why they were organized that way.

The same is true of Williams's complaint that counsel failed to "acquire any photo(s)" of the "car dash console" where Deputy Carmichael found the packet of cocaine. Williams fails to show that there is a reasonable probability the result of his VOP hearing would have been different had a photograph of the ashtray console been entered into evidence. *Richter*, 562 U.S. at 112.

For all of the reasons stated above, the state court's rejection of Williams's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Williams is not entitled to habeas relief on Ground One.

| | |
|---|---|
| **<u>Ground Two</u>** | **<u>"Brady Violation: The State failed to disclose all evidence pertaining to the handling of evidence which included photos and investigation reports." Doc. 1 at 9.</u>** |

Williams claims that the State failed to disclose all photographs and investigation reports. Doc. 1 at 9. Williams provides no additional information regarding this claim. Williams asserts that he exhausted this claim by raising it on direct appeal of his VOP judgment and in his state habeas petition that was denied as untimely by the state circuit court on August 19, 2022 (the construed third Rule 3.850 motion). *Id.* at 9-10.

The State asserts that Williams did not raise this claim in his direct appeal or in a state habeas petition. Rather, Williams raised this claim in his first Rule 3.850 motion, and the state court denied relief because the claim was procedurally barred under state law. Doc. 25 at 23-28.

### A.    *The State Court's Decision*

Williams did not raise a *Brady* claim in his direct appeal from the VOP judgment. *See* Doc. 15-28, Ex. BB (Initial Br.) Williams also did not raise a *Brady* claim in any of his state habeas petitions. *See* Doc. 15, Ex. NN, Ex. TT, Ex. VV.

Williams did, however, raise a *Brady* claim in his first Rule 3.850 motion. Doc. 15-34, Ex. HH at 7-8. He claimed that the State "crippled Defendant's defense" by failing to photograph the ashtray console where Deputy Carmichael found one of the packets of cocaine.

The state circuit court denied relief as follows:

> As to Ground Two, Defendant alleges that the State committed a discovery violation which prejudiced his defense during the VOP hearing. The claim raised is procedurally barred. "Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attach." *Johnson v. State*, 593 So. 2d 206, 208 (Fla. 1992) (citing *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983)). Motions filed under rule 3.850 "cannot be utilized for a second appeal." *Jones v. State*, 446 So. 2d 1059, 1061-62 (Fla. 1984).

Doc. 15-35, Ex. II at 5. The First DCA affirmed without explanation. Doc. 15-39, Ex. MM.

**B.**    *Exhaustion Requirement and Procedural Default Rule*

"To respect our system of dual sovereignty, the availability of habeas relief is narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. 366, 375 (2022) (citations omitted). One such constraint is the exhaustion requirement and corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 596 U.S. at 375-79.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 596 U.S. at 377 (alteration adopted) (quoting 28 U.S.C. § 2254(b)(1)(A)). "[A] state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures." *Shinn*, 596 U.S. at 378.

When a prisoner fails to raise his federal claim in compliance with state procedures, and the state court rejects the claim on an adequate state ground independent of the federal question such as a state-law procedural bar, the federal court must apply "an important corollary to the exhaustion requirement: the doctrine of procedural default." *Shinn*, 596 U.S. at 378 (internal quotation marks and citation omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 734-35 & n.1 (1991) (federal habeas

courts will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default). "[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts." *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001).

### C.    *Williams's Claim Is Procedurally Defaulted*

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). In other words, where, as here, "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Id.* at 803; *see also Richter*, 562 U.S. at 99-100 (citing *Ylst* as an example of where the presumption of a merits adjudication is overcome).

This court presumes that the First DCA rejected Williams's *Brady* claim on the same state procedural ground that the lower court invoked— the claim was not cognizable on postconviction review because it could have and should have been raised in Williams's direct appeal. The state

court's procedural-bar ruling is an independent and adequate state-law ground for rejecting the *Brady* claim. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Thus, Williams's *Brady* claim is procedurally defaulted. *See LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 & n.25 (11th Cir. 2005) (Florida prisoner's habeas claim was procedurally defaulted because the state courts rejected the claim on the independent and adequate state-law ground that it could have been raised on direct appeal but was not).

### D.   *Williams Has Not Overcome the Procedural Default*

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352–53 (11th Cir. 2012). A petitioner establishes "cause" by showing that an objective factor external to the defense impeded an effort to properly raise the claim in the state court. *Henderson v. Campbell*, 353 F.3d 880, 892

(11th Cir. 2003). A petitioner establishes "prejudice" by showing at least a reasonable probability that the proceeding's result would have been different. *Id*.

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. The *Schlup* standard is very difficult to meet:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that that was not presented at trial.

513 U.S. at 327.

Williams makes none of the required showings to excuse his procedural default. Williams "claims innocence starting from the initial arrest and all court proceeding ad motions." Doc. 27 at 2. Williams, however, offers no evidence that arguably satisfies the *Schlup* standard

for factual innocence. His assertion that there was insufficient evidence to support the probation revocation does not satisfy the *Schlup* standard. Doc. 27 at 2-3. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (the fundamental miscarriage of justice exception "is exceedingly narrow in scope, as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence."). Williams's procedural default bars habeas relief on Ground Two.

## IV.  A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation, the relevant party shall file such an objection with the District Court.

## V.   CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    The petition for writ of habeas corpus, Doc. 1, challenging the probation-revocation judgment entered on January 28, 2019, in *State of Florida v. Carlton Lorenzo Williams*, Alachua County Circuit Court Case No. 2013-CF-3503, be **DENIED**.

2.    The District Court **DENY** a certificate of appealability.

3.    The clerk of court close this case file.

At Panama City, Florida, this <u>12th</u> day of August, 2024.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

### <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**